TERENCE T. EVANS, Circuit Judge.
In this case, we are asked to review a nationwide class certification, accompanied by an injunction against all competing class actions. The plaintiff class is made up of landowners whose property is subject to railroad rights of way, along which defendant telecommunications companies have installed fiber-optic cables without the landowners’ permission. See generally Jeffery M. Heftman, Railroad Right-of-Way Easements, Utility Apportionments, and Shifting Technological Realities, 2002 U. Ill. L.Rev. 1401. We reversed.certification of a virtually identical class in Isaacs v. Sprint Corp., 261 F.3d 679 (7th Cir. 2001), observing that differences in state law concerning the scope of the railroads’ easements, along with differences in the various deeds themselves, would result in “a nightmare of a class action.” This time, though, the class has been certified for settlement only, which the settling parties insist eliminates the complications that made the class uncertifiable in Isaacs. The intervening parties — who represent statewide plaintiff classes already certified in Tennessee and Kansas — argue that the class still fails to meet the certification requirements of Fed. R. Crv. P. 23(a) and (b).
Before getting to the matter at hand, we note that this case has had a troubled history. The original complaint was filed in 1999 by certain representative plaintiffs against Sprint Communications and the Union Pacific Railroad, claiming damages for the. wrongful installation of fiber-optics cables across their land and seeking class-action- status in the district court for the Northern District of Illinois. In 2001 the parties announced that a nationwide settlement was in the works in which all similar claims against Sprint and four other companies not yet named as defendants would be settled. Thereafter, representative class-action plaintiffs in other cases around the country got wind of the deal and intervened in order to object.
After a half a dozen hearings in Chicago, engaging the time of a district judge, a magistrate judge, and a Special Master, • the settling parties, apparently not pleased with how things were going in the Windy City because the court seemed to be disinclined to approve the settlement, migrated to the United States district court in Oregon and submitted it there for preliminary approval. In doing so, plaintiffs counsel sent a letter to the judge in Chicago informing him that the settling parties would no longer seek approval of the settlement agreement-in the Northern District of Illinois. After one hearing, the Oregon dis *614 trict judge (Judge Ann Aiken), in a decision that hit the nail squarely on its head, dismissed the case on the grounds of “judge shopping.” Zografos v. Qwest Communications Corp., 225 F.Supp.2d 1217, 1223 (D. Or. 2002). The settling parties then returned to Chicago for another stab at making their deal stick.
The fact that a settlement has been reached is, of course, relevant. “Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.” Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citation omitted). But settlement is not a cure-all: “[The] other specifications of [Rule 23] — those designed to protect absentees by blocking unwarranted or overbroad class definitions — demand undiluted, even heightened, attention in the settlement context.” Id. These include the requirement that the class representatives’ claims be typical of those of the class and that the representatives will adequately protect the class’s interests. Fed. R. Civ. P. 23(a)(3), (4). And not just the class as a whole: where there are significant differences among subgroups within the class, “the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups.” Amchem, 521 U.S. at 627, 117 S.Ct. 2231 (quoting In re Joint Eastern and Southern Dist. Asbestos Litig., 982 F.2d 721, 743 (2nd Cir. 1992)).
The intervening parties identify several ways in which the settling plaintiffs do not adequately represent the interests of landowners in Tennessee and in Kansas. Those two groups have already been certified as litigation classes in their respective states, and each was on the eve of trial when the district court in Chicago issued its injunction. Additionally, the Tennessee class members have established liability in state court for the taking of their property, see Buhl v. U.S. Sprint Communications Co., 840 S.W.2d 904, 912 (Tenn.1992), and estimate compensatory damages at approximately ten times greater than the upper limit provided by the proposed nationwide settlement. They have also shown that punitive damages may be available for trespass to their property, see Meighan v. U.S. Sprint Communications Co., 924 S.W.2d 632, 641-42 (Tenn.1996), subject to proof at trial.
The nationwide class, in contrast, has not been and cannot be certified for trial— see Isaacs, 261 F.3d at 681-82. The nationwide class plaintiffs thus entered negotiations in what the Amchem court describes as a “disarmed” state, unable to “use the threat of litigation to press for a better offer,” Amchem, 521 U.S. at 621, 117 S.Ct. 2231 — not a good position from which to represent the interests of parties that do wield such a threat.
The settling parties argue that the inter-venors’ interests are nevertheless protected. Specifically, the settlement agreement provided that adjustments will be made to the amount of recovery available to landowners in a given state, based on an analysis of that state’s law by independent property-law experts. But although that may tend toward a more equitable division of funds, it does not provide the “structural assurance of fair and adequate representation” prior to the settlement itself that Rule 23 demands. Amchem, 521 U.S. at 627, 117 S.Ct. 2231. Law professors are no substitute for proper class representatives. Cf. Uhl v. Thoroughbred Tech. & Telecomms., Inc., 309 F.3d 978, 987 (7th Cir.2002); In re Agent Orange Prod. Liab. Litig., 818 F.2d 179, 185 (2nd Cir.1987) *615 (disallowing the administration of class funds by independent foundation without judicial oversight).
We agree with the intervenors that they are inadequately represented by the settling plaintiffs.[1] We therefore VACATE the nationwide class certification and the district court’s injunction against competing class actions and REMAND the case to the district court for further proceedings. Costs are awarded to the Interve-nors.

. Our dissenting colleague, in rejecting our approach to this case, observes that if "a similar approach had been applied to the construction of the first transcontinental railroad, the Pony Express might still be galloping along.” We doubt that his observation is true but also note that the Pony Express might well be still galloping along if class-action lawyers were on the prowl in the 1830’s.